The next matter, No. 25-1312, John B. Cruz Construction Co., Inc. v. Beacon Communities Corp. et al. At this time, would Counsel for the Appellant please introduce herself on the record to begin? Good morning, Your Honors. May it please the Court. My name is Carolyn Crowley, and I represent the Appellant, John B. Cruz Construction Company, Inc., and with me are my colleagues, Attorney Gaylord and Attorney Daniels, and may I please reserve two minutes for rebuttal? You may. Thank you. This case is about two competing narratives and disputes of material fact which are for a jury to decide. The District Court erred because Beacon failed to show that it was entitled to judgment as a matter of law, and to set the stage for the July 2016 telephone conference between Mr. Cruz and Pamela Goodman of Beacon, it's important to note that the authorities here, Beacon and Cruz through its sister development company, had both just submitted lengthy responses to the Boston Housing Authority's request for proposals. It was for the project, for the one project. When the telephone call is placed by Ms. Goodman in July 2016, it's one project. We know this because the BHA issued one RFP, Beacon responded to one RFP, and was designated developer for the project. After that happens, the BHA asks Beacon to include Cruz, a minority owned business, as a significant participant on the project. That is why Ms. Goodman calls Mr. Cruz, and what Mr. Cruz states in his statement, a general contractor from the beginning of the project. The words he says is from the outset. Counsel, this was a case that had a lot of facts in the record, and the affidavit is obviously a key part of the facts that you're relying on, but I'm just wondering if you can address whether the affidavit was contrary to the deposition testimony given by your client, because as I understand it, during his deposition, he was asked a question along the lines of, did Pam Goodman say to you, if you're competitive, you will be the general contractor on the Lenox Apartments construction? Did she say that to you? And he answered no. So isn't it inconsistent, and we have case law saying that an affidavit submitted with summary judgment, if it's inconsistent with deposition testimony, it has to be considered a bit differently. And so, excellent question. I don't think that it is contradicted by his deposition testimony. The negotiated bid agreement, that process wasn't really discussed at his deposition. So his affidavit supplements what he says. There's also, we submitted in the record, some errata sheets, which I think should be carefully reviewed. They are ignored by Beacon. So I don't think so, and I would also point out to the court that Ms. Goodman, who submits her competing affidavit, it was preceded by her testimony at deposition, that she did not remember her first conversation with Mr. Cruz, and she apologized for that. And so I think the affidavits need to be looked at in full. Mr. Cruz's affidavit in particular, paragraph six, and then 11 through 20, they're very specific and detailed. He says with whom he spoke, when they spoke, and what they spoke about. Some of the terms here are a little tough to understand, too. I think they're specific to the construction industry. But does your argument depend on how the negotiated bid process works and what that is? And my question is, how does that work when you also have an RFP process? Sure. And so the negotiated bid agreement is actually, in a sense, pretty simple, and it works in the context here. Both parties understood what the project was going to be. And the negotiated bid agreement is really this, that the general contractor that you have retained to start on the project from the outset gets to submit its pricing. So yes, there are these later two phases, Camden and Lenox, right, that are going to need to be competitively priced. When you look at the BHA RFP, that's all it requires, is competitive pricing, which is consistent with this negotiated bid agreement. So a general contractor comes into it, and what they do is they price things out, is what the architectural firms, drawings, can that be built, and for how much. And what Cruz needed to do was submit pricing that was less than or within 5% of the other prices obtained. So it's going to be competitively priced, obviously, it needs to be, but Cruz has the inside look. It is doing that work all along, up until the time that the architectural drawings are finished, and then submits its pricing. And Beacon is obligated to go with Cruz because it has reached this agreement with Cruz. Council, obviously, the hard thing about implied contracts is we don't have a writing, and there's always competing testimony about what happened. And so under the law, the course of conduct is supposed to be quite important, as I'm sure you'll agree. And so the question I have for you is when your client is not provided the opportunity to even bid on the for 2019, if there had been an implied contract that he would be the general contractor for that phase, why doesn't he complain at that point? And why isn't that sort of a critical conduct fact that really undermines his claim? Because if it had been a contract and he understood it to be a contract, and he's not even permitted to bid, it seems that the natural step would be to go to Beacon and say, hey, what's going on here? We had an agreement. And that just doesn't happen. Yeah, so my answer to that is he had no affirmative obligation to do that. Yes, he was frustrated in all sorts of things about not being able to submit his pricing, but he didn't need to go and pound the table and say, Ms. Goodman, no, let me please submit my pricing. But you couple that with, you know, for Camden, there's a process after the phone call. There's a process. There's a lot of paperwork. There are other people bidding. He sees all that. He gets it. He knows it's just Camden. That seems weird to think that we're just doing Camden now, but somehow I have it all. So, I mean, we have to take, even if we accept your affidavit, which I'm dubious of, because in the deposition, he's asked, like, what's the contract? He says, I don't know. My lawyer will tell you. It seems like a weird way to do litigation that then there's an affidavit that comes later that then tells us. Anyway, it seems to me that we have to figure out what to make of the phone call in light of what happened, and when there is this complex bidding process that happens next with documents about one project, it's weird to think that a reasonable person could think, oh, but really he was promised both. Yeah, and I would ask you to look very carefully at Beacon's conduct. So how do we know what the party's intended? By looking at what they did, and it's not addressed in the district court decision, and it's perhaps understandable because Beacon has not addressed its own conduct. It knew in December 2016 that Cruz was holding itself out as the general contractor, and that's because Beacon had asked it to respond to the Carpenter's Union inquiry, and it did so as the contractor, and instead of objecting or saying, no, Mr. Cruz, that's not right, Ms. Goodman says. But I guess I don't get that. It was the contractor for the part that was going to happen first, so if the union says we're interested, he did have a real role. Cruz did have a real role. That's all true, and you would maybe refer to the contractor. I don't understand how we come out from that, but really that made it the whole thing. Sure, and so if I could, the timing is very important here. When the Carpenter's Union reaches out, it's December 2016, and they reach out with regard to Lenox. The Camden drawings are not ready until the end of 2018, and actual construction on Camden doesn't start until 2019. So between December 2016 and when actual construction starts, there's numerous instances in the record where Beacon is holding Cruz out as the general contractor member, listed in its PNF in 2018. That's the project notification filing required to be submitted to the Boston Development and Planning Agency. It does it in numerous ways. It asks for Cruz's bonding capacity. Beacon asserts now that Cruz was only ever doing these pre-construction services. You don't need bonding capacity to do pre-construction services. Would you need bonding capacity if you were still being thought of as a potential for Lenox? I mean, at some point they have to make the decision, you didn't do well enough, we're not going to go forward, but that happens at some date. So is there any inconsistency there, really? I don't think so, and when Beacon asks for Cruz to confirm its bonding capacity, it does so to the tune of $60 million for the entire project, both pieces, Camden and Lenox. And when is that request made? That request is in, just to be accurate, that is in 2018, in August of 2018. And they are sort of, your allegation is they are, the decision is made by Beacon not to invite them to do Lenox, when is that, May of 2019? September of 2019. That's when they're told, and I think the allegation is they were, the decision was actually made earlier, but that's still in 2019? Correct, May 2019. That's when Ms. Goodman says Cruz will not be doing Lenox. An interesting thing to say, if Cruz was never not doing Lenox. Thank you. Any other questions? Otherwise I'll see you on rebuttal. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin. Good morning, your honors. Good morning. Michael Gardner, along with Tony Starr from Mince on behalf of the, on behalf of the appellee. Your honor, I would submit to you, we didn't talk about, the case has two phases to it. One is the section 1981 and the other is this so-called oral contract claim. There were no questions about section 1981. My brief deals with that, I think fully, I'm happy to answer any questions you have, but I think that claim is of such a dubious nature that I won't spend time addressing it unless your honors have any particular questions with respect to that. With respect to the oral contract claim, the undisputed facts demonstrate that this telephone call, which lasted only a few minutes, there was no unambiguous agreement between Ms. Goodman on the one hand and Mr. Cruz on the other hand, that dealt with the construction of the Lenox project, not even with, to be sure, not even with respect to the Camden project which preceded it, the Lenox project, by two years. And the conversation occurred in 2016, so that's two years before even the Camden project takes place. And there was certainly no discussion, much less agreement, about all the material terms that would go into a, into a contract. Counsel. Yes, your honor. In terms of what happened in the phone call, it just seems like there's a classic he said, she said dispute here. And of course, this is a summary judgment, so we have to construe all the facts in the light most favorable to Mr. Cruz. So in your view, you know, why, why isn't there a genuine dispute of material fact about what happened in that conversation given the affidavit and the testimony that is different and Ms. Goodman's somewhat contradictory positions about whether she remembered or didn't remember what happened on the phone call, why isn't that, at least that part of the test? We also have to look at the course of conduct, but the evidence about the conversation, why isn't there a genuine dispute there? Because you said he said, she said. When I read that affidavit and the argument that I heard, there's a lot of what he said. There's almost nothing, if anything, about what she said. Mr. Cruz, in his own affidavit, is doing a lot of talking. Well, here it is. She said, Beacon was inviting Cruz to be the general contractor on the Lenox Camden project. Ms. Goodman added that BHA required construction of the project be competitively priced and that she thought Cruz's price would be acceptable if it was less than or within 5% of the price. So you get it, as long as you're within 5% of the price. That's what it says. That is what it says. I still think it's a lot of him talking, but the important point on the conversation, and then I'd like to switch over to the, I'm sorry, I'd like to switch over to the conduct, if I may, because to me, that's the far more important point. And they agree under the Twin Fires decision, and I think your Honor pointed out, you look both at what statements were purportedly made during the conversation and the affidavit. It's actually the affidavit and your Honor indicated a certain dubious nature about that and I fully concur in that. But it's not, even taking that at its face value, the only thing that they supposedly talked about was price. But this contract had far more material terms than just price. And there's no allegation that there was slightest discussion about all the other material terms that would go into a contract. This was a project, and even taking their word for it, for both Lennox and Cruz, and Camden when you combine them, it involves the moving of three- So clearly you don't, I mean I understand there's a huge project, I get all that, so the real, the formal contract's going to have a million provisions. What are the ones, what are the ones you think need to be to form an implied contract that I'm going to get the job? That have to be, first of all, if you look at the RFP that went out, just for Camden, there was 200 pages of conditions for that project. So that's 200 pages of things the parties would have to agree upon. But you agree that it's not required for there to be this kind of implied contract, that all of those things, all 200 pages were worked out ahead of time? I'm not saying that all 200 pages have to be- So what would have to be worked out ahead of time? Yeah, you'd have to work out, it involves the movement of 200 families from their homes, temporarily moving them somewhere and putting them back. They would have to be, as a material term of that agreement, they'd have to come to some arrangement, all right, how are they going to be moved out? What's the process that's going to be followed to do that? Because you're inconveniencing all of these people, many of whom are below the poverty level, and you need to take care of that. How are you going to do that? What's the structure that going to be? What's the schedule of that going to be? How is that all going to occur? Now there's all sorts of, what sort of materials are going to be used? What sort of procedures are going to be followed in terms of doing all of this work? I'm not suggesting you need to do every 200 pages of jot and tittle, but please, you know, how many families are going to be moved? When are they going to be moved? Where are they going to be moved to? What are the procedures that are going to be followed? What materials are we going to use? What is the schedule that's going to be followed in connection with the construction? There's a bevy of just crucial material construction terms that need to be agreed upon by the parties. To hear my sister say it, well, as long as you say, all right, you come within 5% of some other bidder on price alone, then you've got it, even though your qualifications haven't been established, even though we haven't come to agreement on what schedule you're going to follow, none of that, and even though everyone else is far better than that, as long as you're within 5%, then you've got the contract. Counsel, it sounds like you're almost arguing that there couldn't be an oral contract here at all for this type of project. Is that essentially what you're saying? No, I'm not saying that. I'm saying if there was a true sit down, instead of a... Well, the premise is, BHA wanted an MBE to do this. They identified this, but that is the premise, though. That is the premise of what Mr. Cruz says, that BHA was interested in MBE. Cruz had been the developer. The sister company had been the developer that had bid and lost. BHA says, this might be someone you should talk to. So the idea was, the movement from the people who are like the ultimate funders want Cruz, and so Goodman is sort of acting on that to call them up and say, we'd like you, as long as you do this, it'll be good. That's the premise of it. I understand what they're trying to say. It just doesn't square with the facts. If you look at the affidavit, and certainly if you look at their deposition testimony, Mr. Cruz never testifies, and there's no evidence in the record, that BHA ever said, you've got to hire Cruz, that you must hire Cruz. They didn't even say you must have an MBE. They said, here's Cruz, you should consider him. And they didn't even say you have to consider him to be the GC for construction. Remember, there are two aspects of a project. My understanding of the record was that BHA said that they wanted an MBE as a significant participant in the project. Yes, and doing the pre-con work is a significant participant in the project. Remember on the Lenox project, Keith Construction, which was far bigger than Cruz Construction is or ever will be, they did pre-con work on the Lenox project. And even though they did the pre-con work on the Lenox project, they weren't invited to bid. Can I ask you to move just because we don't have a lot of time for the course of conduct issue, and I think Judge Aframe asked to pose and counsel this. Can you explain to us the relevance, we're not experts in the construction industry, of the bonding point and tying up his bonding capacity to the tune of $60 million, I guess it was. Why isn't that a significant fact in Mr. Cruz's favor? Because there was no tying up. We simply asked him what his bonding capacity was. Just like you would ask any of the other bidders or potential bidders, what's your bonding capacity? Are you able to do this work? There was no promise made that you would get the work. We're simply finding out at the same time, we're asking what his bonding capacity is, and this is before Lenox ever comes on. I think Cruz also argues in this course of conduct line that Beacon lists Cruz as construction manager or management. I'm happy to address that. What happened in 2016, the Carpenter's Union, not talking about the Lenox project, this is 2016, the Carpenter's Union is asking some questions. Now, 2016, the RFP for Camden had not even gone out. Certainly the RFP for Lenox had not even gone out. So there was no general contractor for construction that had even been bid on, much less appointed. In 2016, Cruz Construction was doing the pre-con work. And what the Carpenter's Union wanted to know, because that's what they're interested in, what is this project going to look like? So you're doing the pre-con work, which means drawings and designing the project. That's what the Carpenter's Union wants to know about. And of course they point the Carpenter's Union to Cruz, because Cruz is doing that pre-con work. But I mean, not to make your argument for you, but I feel like you're, isn't it that, sure, you wanted Cruz, you certainly gave the first one to Cruz. It's not like you were adverse to giving Cruz the second one. I imagine for a long time you thought we would give him the second one if he did really well, but he didn't. And that's the reason. So, I mean, am I wrong about this? Like it's sort of like, that's why the bonding thing didn't strike me as that meaningful, because in 2018 you still probably were interested in Cruz. Well, yes. We needed to see, and you're right, because the performance hadn't started until 2019. That's correct. I would like to, thank you, Your Honor, yes. I would like to talk a bit about the conduct. Your Honor's touched about one thing. Your time is up. You're actually over. Thank you, Your Honor. Thank you. At this time, would counsel for the appellant please come back and reintroduce herself on the record. She has a two minute rebuttal. Thank you again, Your Honors. Carolyn Crowley. If I could, I want to start with the Carpenter's Union inquiry. There is no evidence in the record that responding to unions is pre-construction work. That's solely an argument now by Beacon. I realize, too, I did not hit the Section 1981 claim, and I just want to discuss it briefly. The believability of Beacon's proffered reason for removing Cruz from the project, and it is- What's the evidence before, sorry, before you, what is the evidence that Cruz believed that if he was terrible on Camden, he would get to do Lennox? I mean, he signed a contract for Camden. We know that. He did an RFP. He got it done. Show me the evidence that he knew if he did terribly on that, he would get the second job. Because that was the agreement he reached with Ms. Goodman, and all- That's just the phone call. The phone call and the subsequent conduct of the parties. Beacon holding Cruz out as the general contractor member on the entire project. Cruz understood that his bonding capacity was tied up. It's in his affidavit. He understood it was basically to the max. He was committed to this project and was not looking for those additional opportunities, and yes, I would- But you can't point me to something where Goodman said it doesn't matter how you do on Camden. To that, I would say this. Beacon can say that the performance was poor, and I have an analogy. You hire a general contractor to renovate your property, and it consists of a guest house and a main house, and the contractor starts on the guest house, and you, for whatever reasons, find the performance poor. You just don't like it, and as Beacon says, it was uncomfortable. The fact is, though, you entered into an agreement for the entire property, and you can absolutely remove that contractor, but you are in breach of the agreement you reached. And so Beacon can- Even though at the interim point, we actually did sign a contract, and it's not about that. It's about just the guest house. We signed a contract about the guest house, but you still are doing the main house, even though we're not going to sign that contract until three years later. Because you do have this oral base agreement for the entire property. And if there's any other questions, I'd be happy to answer them. I see my time is up. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.